UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NECA-IBEW PENSION TRUST FUND and
DENIS MONTGOMERY, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

-against-

BANK OF AMERICA CORPORATION, *et al.*,

        Defendants.

Case No. 10-cv-00440 (LAK) (HBP)

ECF CASE

**THE BAC DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT FOR FAILURE TO STATE A CLAIM**

O'MELVENY & MYERS LLP
Seven Times Square
New York, New York  10036
(212) 326-2000

*Attorneys for the BAC Defendants*

June 10, 2011

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I. THE FAC'S CLAIMS ARE TIME-BARRED .................................................................. 3

    A. The Supreme Court's Merck Decision Did Not Alter the Trigger for Section 13's Statute of Limitations ........................................................................ 3

    B. BAC's Specific Disclosures Put Investors on Notice of Their Claims More than One Year Before January 19, 2010, Even Under a More Stringent Standard ................................................................................................................. 5

    C. American Pipe Tolling Cannot Salvage the Series K Claims ................................ 6

II. THE FAC DOES NOT ADEQUATELY ALLEGE ANY ACTIONABLE MISREPRESENTATION OR OMISSION CONCERNING LOSS RESERVES ............ 8

    A. The FAC's Loss-Reserve Allegations Are Mere Hindsight .................................. 8

    B. Valuations and Loss Reserves Are Non-Actionable Opinions ............................ 10

    C. The Challenged Statements Were Forward-Looking and Accompanied by Meaningful, Specific Risk Disclosures ................................................................ 11

III. THE COUNTRYWIDE ACQUISITION STATEMENTS ARE NON-ACTIONABLE OPTIMISTIC STATEMENTS .............................................................. 13

IV. PLAINTIFFS' ALLEGATIONS CONCERNING BAC'S INADEQUATE INTERNAL CONTROLS DO NOT DEMONSTRATE A VIOLATION OF ANY DISCLOSURE DUTY ...................................................................................................... 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

### CASES

*In re Ambac Financial Group, Inc. Securities Litigation*,
  693 F. Supp. 2d 241 (S.D.N.Y. 2010).................................................................................. 9

*In re American Funds Securities Litigation*,
  No. CV 06-7815-GAF, 2011 WL 1827220 (C.D. Cal. Feb. 22, 2011) ................................ 4

*In re American International Group, Inc., 2008 Securities Litigation*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010).............................................................................. 7, 8

*Amorosa v. AOL Time Warner Inc.*,
  409 Fed. Appx. 412 (2d Cir. 2011)..................................................................................... 4

*In re Barclays Bank PLC Securities Litigation*,
  No. 09 Civ. 1989 (PAC), 2011 WL 31548 (S.D.N.Y. Jan. 5, 2011) ................................... 3

*In re CIT Group Inc., Securities Litigation*,
  349 F. Supp. 2d 685 (S.D.N.Y. 2004)............................................................................... 10

*In re Citigroup Inc. Bond Litigation*,
  723 F. Supp. 2d 568 (S.D.N.Y. 2010)............................................................................. 7, 9

*City of Pontiac General Employees Retirement System v. MBIA, Inc.*,
  637 F.3d 169 (2d Cir. 2011)................................................................................................ 5

*In re Converium Holding AG Securities Litigation*,
  No. 04 Civ. 7897 (DLC), 2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006) ............................ 6

*In re Countrywide Financial Corp. Securities Litigation*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................................... 7, 8

*Fait v. Regions Financial Corp.*,
  712 F. Supp. 2d 117 (S.D.N.Y. 2010)............................................................... 2, 4, 10, 11

*First Nationwide Bank v. Gelt Funding Corp.*,
  820 F. Supp. 89 (S.D.N.Y. 1993)...................................................................................... 10

*In re Franklin Bank Corp. Securities Litigation*,
  ___ F. Supp. 2d ___, Civil Action No. 4:08-CV-1810,
  2011 WL 1100272 (S.D. Tex. Mar. 21, 2011).................................................................... 4

*Freudenberg v. E*Trade Financial Corporation*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)................................................................................. 9

*In re Giant Interactive Group, Inc. Securities Litigation*,
  643 F. Supp. 2d 562 (S.D.N.Y. 2009).............................................................................. 13

*In re Globalstar Securities Litigation*,
  No. 01 Civ. 1748(SHS), 2003 WL 22953163 (S.D.N.Y. Dec. 15, 2003)......................... 13

*Halperin v. eBanker USA.com, Inc.*,
  295 F.3d 352 (2d Cir. 2002).............................................................................................. 12

*Heller v. Goldin Restructuring Fund, L.P.*,
  590 F. Supp. 2d 603 (S.D.N.Y. 2008).............................................................................. 13

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)............................................................................................................ 4

*In re Lehman Brothers Securities & ERISA Litigation*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) ................................................................................... 7

*Lippe v. Bairnco Corp.*,
    229 B.R. 598 (S.D.N.Y. 1999) ............................................................................................. 15

*The Manufacturers Life Insurance Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette
    Securities Corp.*, No. 99 civ. 1944(NRB), 2000 WL 709006 (S.D.N.Y. June 1,
    2000) .................................................................................................................................... 14

*Merck & Co., Inc. v. Reynolds*,
    130 S. Ct. 1784 (2010) ................................................................................................. passim

*Mycak v. Honeywell, Inc.*,
    953 F.2d 798 (2d. Cir. 1992) ............................................................................................... 14

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) ..................................................................... 9, 10, 13

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
    No. 08 Civ. 5653 (PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) .............................. 9

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland*,
    720 F. Supp. 2d 254 (S.D.N.Y. 2010) ................................................................................. 13

*In re Prudential Securities Inc. Limited Partnerships Litigation*,
    930 F. Supp. 68 (S.D.N.Y. 1996) ........................................................................................ 13

*Rombach v. Chang*,
    355 F.3d 164 (2d. Cir. 2004) ................................................................................................. 5

*In re Salomon Analyst Level 3 Litigation*,
    373 F. Supp. 2d 248 (S.D.N.Y. 2005) ................................................................................. 10

*Time Square Construction, Inc. v. Mason Tenders District Council of Greater
    New York & Long Island*,
    No. 07 Civ. 7250(SAS), 2008 WL 55116 (S.D.N.Y. Jan. 2, 2008) ..................................... 14

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
    692 F. Supp. 2d 387 (S.D.N.Y. 2010) ............................................................................ 10, 11

*In re Veeco Instruments, Inc., Securities Litigation*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ......................................................................................... 13

*In re Wachovia Equity Securities Litigation*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ............................................................................... 5, 7

*In re Worldcom, Inc. Securities Litigation*,
    No. 02-cv-3288, 2004 WL 555697 (S.D.N.Y. Mar. 19, 2004) .............................................. 7

*Yu v. State Street Corp.*,
    686 F. Supp. 2d 369 (S.D.N.Y. 2010) ............................................................................. 9, 10

**STATUTES**

15 U.S.C. § 77m .............................................................................................................................. 6

## PRELIMINARY STATEMENT[1]

Despite filing two separate Opposition briefs, Plaintiffs remain unable to identify a single contemporaneous fact suggesting that BAC made materially false and misleading disclosures concerning its loans, leases, CDOs, and other assets, or its Countrywide acquisition and Countrywide's expected performance. They have therefore failed to distinguish their allegations from those in numerous other securities claims that courts have dismissed as premised on nothing more than hindsight allegations that defendants should have earlier predicted negative developments.

Here, the January 2009 disclosure at issue was made in the aftermath of a worldwide economic collapse that the Federal Reserve Chairman described as a once-in-a-century credit tsunami and that had resulted in the 2008 collapse of Lehman Brothers and Bear Stearns, among many other elite institutions. It was in that context that BAC disclosed that it (i) was increasing its reserves for its loans, leases, CDOs, and other assets based on anticipated increasing losses on those assets; (ii) experienced worse than expected financial results in the fourth quarter of 2008; and (iii) experienced worse than anticipated performance at its Countrywide subsidiary. Plaintiffs assert that these January 2009 disclosures revealed business challenges that BAC should have disclosed earlier. But the January 2009 disclosure echoed numerous earlier BAC announcements, including multi-billion-dollar increases in BAC loan loss provisions and repeated warnings that the global economic meltdown was, and would continue, adversely

---

[1] "Opening Brief" shall mean The BAC Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint for Failure to State a Claim, cited herein as "BAC Mem. __." "Plaintiffs' BAC Opposition" shall mean Plaintiffs' Memorandum of Law in Opposition to BAC Defendants' Motion to Dismiss First Amended Complaint, cited herein as "Opp. __." Unless otherwise specified, all other defined terms shall have the meaning ascribed to them in the Opening Brief, all emphasis is added, and all citations and quotations are omitted.

affecting BAC's businesses.  Those earlier disclosures defeat the FAC's claims in at least three ways.

*First,* they show that the FAC's claims rest on hindsight because Plaintiffs have been unable to specify a single contemporaneous fact contrary to BAC's earlier statements.  *Second*, the earlier disclosures put Plaintiffs on notice of facts forming the basis for their claims more than one year before Montgomery first sued in January 2010, rendering those claims untimely under Section 13's one-year statute of limitations.  *Third*, the statements were accompanied by numerous risk disclosures that (i) warned of the very risks that Plaintiffs allege caused their investments to lose value, therefore rendering the statements inactionable under the bespeaks caution doctrine and the statutory safe harbor for forward-looking statements; and (ii) made clear that the valuations the FAC challenges were matters of opinion that are not actionable under the federal securities laws.

Plaintiffs' counter-arguments are unavailing:

- Plaintiffs contend that their claims are timely because the Supreme Court in *Merck* elevated the level of notice required to trigger the Securities Act's one-year statute of limitations.  But *Merck* addressed the notice trigger under the Exchange Act, not the Securities Act.  And even if *Merck* could be applied to Securities Act cases, BAC's detailed earlier disclosures were sufficient to put Plaintiffs on the stricter level of notice well more than one year before they filed their original complaint.

- Plaintiffs argue that Montgomery, who never purchased Series K Securities, nevertheless has standing to sue on those securities and therefore tolled the limitations period for claims concerning them.  But as Plaintiffs' own authority holds, a plaintiff lacks standing to sue on securities it did not purchase, even if it is alleging common misrepresentations and omissions.  This is because a plaintiff cannot assert an economic injury for securities it did not purchase.

- Without citing any authority, Plaintiffs contest BAC's showing that loss reserves and valuations are non-actionable opinions.  But Plaintiffs' effort to distinguish Judge Kaplan's decision in *Fait v. Regions Financial* founders because that case involved the valuation of a loan portfolio, and Plaintiffs make no effort to distinguish BAC's other authorities.

- Plaintiffs contend that BAC's risk disclosures were too generic to invoke the safe harbor for forward-looking statements and the bespeaks caution doctrine. But those disclosures warned investors of the very risks that caused BAC's loss-reserve increases and declining financial performance, including the uncertainty in the financial markets and the increasing pressure on the value of BAC's loans, leases, and other assets.

In sum, Plaintiffs invested in BAC securities during a period of well-publicized market turmoil, delayed filing their claims, and now accuse BAC of nothing more than failing to predict and disclose what the future would hold. Their claims should be dismissed in their entirety, with prejudice.

## ARGUMENT

**I.     THE FAC'S CLAIMS ARE TIME-BARRED.**

### A.     The Supreme Court's *Merck* Decision Did Not Alter the Trigger for Section 13's Statute of Limitations.

Plaintiffs do not dispute that they were on at least inquiry notice of their claims for more than one year before January 19, 2010, when Montgomery filed the original complaint. Instead, Plaintiffs argue that the Supreme Court's ruling in *Merck & Co., Inc. v. Reynolds*—a case involving claims only under the Securities Exchange Act, not the Securities Act[2]—somehow eliminated the "inquiry notice" standard for Securities Act claims. (Opp. at 13–14.) But as Judge Crotty held in *Barclays*, until the Second Circuit determines whether *Merck* extends to the Securities Act of 1933, the inquiry notice standard should continue to govern in Securities Act cases.[3]

And there is good reason not to extend *Merck* beyond the Exchange Act context. The essence of *Merck* is that "facts constituting the violation" for Exchange Act claims include

---

[2] 130 S. Ct. 1784 (2010).

[3] *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2011 WL 31548, at *6 (S.D.N.Y. Jan. 5, 2011) (holding that "the inquiry notice standard" applies because "the Second Circuit has not yet had occasion to determine whether *Merck* requires a change in how the Circuit interprets Section 13 of the 1933 Act").

particularized scienter-related facts.  Unlike the Exchange Act Section 10(b) claims at issue in *Merck* that require a plaintiff to plead particularized facts giving rise to a strong inference of defendants' intent to defraud, the Securities Act Section 11 and 12 claims at issue here have no scienter element at all.[4]  As the Court in *Merck* emphasized, triggering the limitations period for Section 10(b) claims before plaintiffs are on notice of sufficient facts to satisfy the stringent scienter-pleading standard would "frustrate the very purpose of the [statute of limitations'] discovery rule."[5]

That rationale simply does not apply in the Securities Act context where the claims do not require particularized scienter allegations.[6]  Securities Act plaintiffs must fashion a Section 11 or 12 claim based on inquiry notice of a statement's material falsity, but need not assert *additional* facts demonstrating that the defendants *intended* to make that false statement.  For this reason, the court in *In re Franklin Bank Corp. Securities Litigation* rejected plaintiffs' argument that *Merck* imposed a higher threshold to trigger the running of the Securities Act's one-year statute of limitations.[7]  And since the *Merck* decision, the Second Circuit has reiterated that "claims under section 11 are barred if brought more than one year after actual or *constructive* notice of the claim."[8]

---

[4] *Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 122 (S.D.N.Y. 2010) ("[T]he Securities Act provisions, unlike Section 10(b) of the Exchange Act, do not require pleading proof of scienter in a case based upon a misstatement or omission of a material fact.").

[5] 130 S. Ct. at 1796.

[6] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).

[7] ___ F. Supp. 2d ___, Civil Action No. 4:08-CV-1810, 2011 WL 1100272, at *14 (S.D. Tex. Mar. 21, 2011) (applying inquiry notice standard to Securities Act claim and refusing to apply *Merck*'s higher standard because "[v]iolations of sections [11] or [12(a)(2)] do not involve the element of scienter, and discovery of scienter is not a factor in a limitations issue"); *see also In re Am. Funds Sec. Litig.*, No. CV 06-7815-GAF, 2011 WL 1827220, at *1 (C.D. Cal. Feb. 22, 2011) (observing on remand that the court's pre-*Merck* "inquiry notice" standard was the same test that *Merck* imposed).

[8] *Amorosa v. AOL Time Warner Inc.*, 409 Fed. Appx. 412, 416 (2d Cir. 2011).

Plaintiffs' authorities are not to the contrary. *City of Pontiac General Employees Retirement System v. MBIA, Inc.* was a case involving Exchange Act claims with a scienter element, not Securities Act claims.[9] And the complaint in *In re Wachovia Equity Securities Litigation* alleged claims under both the Exchange Act and the Securities Act. In applying *Merck* to the Securities Act claims, the court made clear that *Merck* "altered the applicable statute of limitations analysis for securities *fraud* claims."[10] But because Securities Act claims do not require scienter allegations, they do not involve "fraud."[11] Thus, the *Wachovia* court mistakenly applied *Merck*'s Exchange Act standard to the plaintiffs' Securities Act claims (along with the plaintiffs' Exchange Act claims) on the basis that it was a "securities fraud" case.

Accordingly, *Merck* did not alter the limitations trigger for the FAC's claims. Because Plaintiffs do not contest that they were on inquiry notice of their claims more than one year before January 19, 2010, those claims are time-barred.

### B. BAC's Specific Disclosures Put Investors on Notice of Their Claims More than One Year Before January 19, 2010, Even Under a More Stringent Standard.

BAC's public disclosures would have been sufficient to trigger the limitations period even under *Merck*'s higher notice standard for Exchange Act claims. Contrary to Plaintiffs' assertion that BAC has not cited a "single BofA-specific" disclosure, BAC's SEC filings are replete with disclosures and warnings regarding BAC's business and financial performance:

- *BAC's Loss Reserves, Financial Performance, and Tier 1 Capital Ratio*: Starting in November 2007, BAC warned that its revenue and net income were decreasing and credit-loss provisions increasing because of extreme market disruptions. From then on, BAC disclosed in nearly every quarterly SEC filing steadily increasing estimated losses for BAC's loans, leases, CDOs, and other investments, and predicted further

---

[9] 637 F.3d 169, 172 (2d Cir. 2011).

[10] 753 F. Supp. 2d 326, 371 (S.D.N.Y. 2011).

[11] *Rombach v. Chang*, 355 F.3d 164, 171 (2d. Cir. 2004) ("Fraud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2).").

decreases in its financial performance.  (BAC Mem. at 13.)  These BAC-specific disclosures plainly put Plaintiffs "on notice that the company was likely to have ongoing problems with reserving."[12]

- *Countrywide's Financial Performance*:  BAC likewise showed in Appendix A to its Opening Brief that the FAC's allegations concerning Countrywide's abandonment of its underwriting standards and other alleged poor business practices read practically verbatim with allegations that other plaintiffs leveled against Countrywide as early as 2007.  And BAC began warning the market in August 2008, only a month after Countrywide Financial Corporation merged into a BAC subsidiary, that the deteriorating markets could depress Countrywide's financial results, putting investors on notice that prior statements concerning Countrywide's anticipated financial contribution were unlikely to bear out.  (Ex. O at 49.)

These BAC-specific disclosures and other information available to the market were sufficient for a reasonably diligent investor to be on notice of the FAC's claims by well more than one year before the original complaint's filing on January 19, 2010.  This is all that *Merck*—and Securities Act Section 13—require.[13]

### C.   *American Pipe* Tolling Cannot Salvage the Series K Claims.

BAC showed in its Opening Brief that Montgomery's original complaint did not toll the limitations period for NECA-IBEW's claims concerning the Series K Securities because Montgomery did not purchase those securities and therefore lacked standing to sue on them.[14]  (*See* BAC Mem. at 14–15.)  Plaintiffs do not deny that a claim by a plaintiff with no standing does not trigger *American Pipe* tolling.  Instead, they assert that Montgomery's standing to sue on the Series H Securities triggered standing on the Series K Securities because both Series were issued under the same shelf registration and base prospectus.  (*See* Opp. at 10.)  But the

---

[12] *In re Converium Holding AG Sec. Litig.*, No. 04 Civ. 7897 (DLC), 2006 WL 3804619, at *17 (S.D.N.Y. Dec. 28, 2006).

[13] *Merck*, 130 S. Ct. at 1798 (affirming reversal of statute of limitations dismissal because defendants failed to show that "a reasonably diligent plaintiff would have discovered the facts constituting the violation");  15 U.S.C. § 77m (providing that statute of limitations begins to run "after the discovery of the untrue statement or the omission . . . should have been made by the exercise of reasonable diligence).

[14] Plaintiffs have conceded that they cannot sue on the Series L Securities because no named plaintiff who purchased those securities has joined the case and the statute of repose has run.  (*See* Opp. at 3, n. 4.)

-6-

confluence of a shelf registration and base prospectus is not enough to bestow standing from one Series holder to another.

As Plaintiffs' own authority—*In re Wachovia*—recognizes, a claim under the Securities Act is limited to "any person acquiring such security."[15] Thus, even where a plaintiff has purchased securities under the same offering documents as other series of securities, the *Wachovia* court concluded that is not enough to confer cross-offering standing. This is because, as Judge Kaplan also recognized in *Lehman*, a plaintiff lacks standing to assert claims concerning securities he did not purchase because he has not suffered an injury in respect of those securities, regardless of whether they were issued under common offering documents.[16] Thus, under Plaintiffs' own authority, their argument fails.

Moreover, this case is fundamentally different from Plaintiffs' other authorities because the Series H and Series K Securities were offered under different documents. Each offering became effective under a prospectus supplement unique to that particular offering. The prospectus supplement for each offering described the different terms of each security, including the dividend rate, any changes in the dividend rate, seniority in payment both on dividends and in liquidation, and other unique factors that were material to each investment. (*See* BAC Mem. at 5–6.) And even more significantly, unlike the claims in *Countrywide*,[17] *Citigroup*,[18] *Worldcom*,[19] and *AIG*,[20] on which Plaintiffs rely, the claims concerning the Series K Securities

---

[15] 753 F. Supp. 2d at 369.

[16] *Id.* at 370. ("Because the . . . Plaintiffs have suffered no injury from Defendants' conduct with respect to securities they did not purchase, all claims arising from the 16 offerings in which none of the named Plaintiffs purchased any securities are dismissed for lack of standing."); *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010) (holding that plaintiff lacked standing where he suffered no injury traceable to securities he purchased).

[17] *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008).

[18] *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d 568 (S.D.N.Y. 2010).

[19] *In re Worldcom, Inc. Sec. Litig.*, No. 02-cv-3288, 2004 WL 555697 (S.D.N.Y. Mar. 19, 2004).

(that Montgomery concededly did *not* buy) stem from a materially different registration statement than those concerning the Series H Securities that he did buy.  That is because Montgomery purchased his Series H Securities in a late-May 2008 offering, whereas the Series K Securities were offered in late January 2008.  (*Compare* Ex. E (Series H Offering dated May 20, 2008) *with* Ex. C (Series K Offering dated January 24, 2008).)  In the interim, BAC had issued its 10-K for the period ended December 31, 2007, which contained additional disclosures concerning the further deteriorating financial market and additional multi-billion dollar increases in BAC's credit-loss provisions.  (*See* BAC Mem. at 8–9.)[21]

Accordingly, Montgomery lacked standing to sue on the Series H Securities, his claims concerning those securities are a nullity, and the filing date for the Series K claims is January 14, 2011, well more than a year after the January 16, 2009 press release Plaintiffs concede constituted actual notice.

## II.     THE FAC DOES NOT ADEQUATELY ALLEGE ANY ACTIONABLE MISREPRESENTATION OR OMISSION CONCERNING LOSS RESERVES.

### A.     The FAC's Loss-Reserve Allegations Are Mere Hindsight.

As BAC explained in its Opening Brief, the mere fact that BAC had to revise its valuations and loss reserves for loans, leases, and other investments after the credit crisis hit does not demonstrate that those valuations and reserves were inflated in early 2008, when BAC offered and sold the Series H and K Securities.  (BAC Mem. at 16–17.)  While Plaintiffs assert in conclusory fashion that there were then-existing impairments to BAC's assets (*see* Opp. at 6, 17), Plaintiffs cite only the subsequent January 2009 writedowns to support that conclusion. That argument fails because "the simple fact of a write-down does not stand for the proposition

---

[20] *In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, 741 F. Supp. 2d 511 (S.D.N.Y. 2010).

[21] *See Countrywide*, 588 F. Supp. 2d at 1167 (noting that later issuances could incorporate different disclosures and be sufficiently different "to lead a Court to deny standing for class plaintiffs on a motion to dismiss").

that values stated before the write-down were inaccurate, and the write-downs certainly do not substitute for facts about the supposedly false valuations themselves."[22] Plaintiffs do not even acknowledge, much less attempt to distinguish, Judge Holwell's on-point decision in *Yu v. State Street Corp.*

Plaintiffs' own authorities are not to the contrary. *New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.* addressed whether the bespeaks caution doctrine protected defendants' disclosures, not whether the complaint alleged a hindsight claim.[23] The complaints in Plaintiffs' other cases all included non-conclusory allegations of contemporaneous facts that, if true, would have rendered the defendants' statements false:

- *In re Citigroup Inc. Bond Litigation*—alleged that defendants knew their statements concerning Citigroup structured investment vehicles' "high credit quality" were false when made because the assets backing those vehicles were subprime mortgages.[24]

- *Freudenberg v. E*Trade Financial Corp.*—alleged specific contemporaneous facts contradicting defendants' statements, including "negative discrepancies in loan documentation, [and] returns of loan pools sold by [defendant] because they were comprised of *below subprime loans*."[25]

- *In re Ambac Financial Group, Inc. Securities Litigation*—alleged that defendant held itself out as a conservative insurance company while it abandoned its conservative underwriting standards "to drive short-term profits."[26]

- *In re New Century*—alleged contemporaneous facts demonstrating falsity, including confidential witness statements and an examiner's report that "found knowledge

---

[22] *Yu v. State St. Corp.*, 686 F. Supp. 2d 369, 380 (S.D.N.Y. 2010).

[23] No. 08 Civ. 5653 (PAC), 2010 WL 1473288, at *7 (S.D.N.Y. Mar. 29, 2010) ("The bespeaks caution [doctrine] cannot immunize Defendants from liability where the harm had already occurred.").

[24] 723 F. Supp. 2d at 592 ("[T]he complaint does not rely exclusively on hindsight but instead alleges that the statements in question were misleading based on information readily available to defendants at the time the statements were made—*i.e.*, that Citigroup's SIVs were largely backed by subprime mortgages and subprime RMBS and were therefore not of 'high credit quality.'").

[25] 712 F. Supp. 2d 171, 192 (S.D.N.Y. 2010).

[26] 693 F. Supp. 2d 241, 269–70 (S.D.N.Y. 2010) ("The conduct that plaintiffs allege, if true, would make Ambac an active participant in the collapse of [its] own business, and of the financial markets in general, rather than merely a passive victim.").

within high-levels of the company of its declining loan quality and underwriting" years before the alleged misrepresentations.[27]

Here, by contrast, the FAC offers nothing more than a hindsight inference from the January 2009 writedowns that BAC's earlier asset valuations must have been inflated. (FAC ¶¶ 13–15.) The FAC therefore fails to state a claim based on BAC's loss reserves and valuations.[28]

## B.  Valuations and Loss Reserves Are Non-Actionable Opinions.

Plaintiffs do not dispute that (i) opinions are not actionable unless the speaker does not truly hold them; and (ii) the FAC eschews any allegation that a defendant knowingly made a false statement. Plaintiffs instead argue—without citing any authority—that BAC's valuations and loss reserves were not opinions. (*See* Opp. at 17–18.)

As BAC demonstrated in its opening brief, Plaintiffs are wrong. Numerous courts— including in cases that Plaintiffs make no effort to distinguish—have held that loan-loss reserves and valuations reflect management's opinions. (*See* BAC Mem. at 17–19.)[29]

Plaintiffs fail in their half-hearted attempt to distinguish Judge Kaplan's two on-point decisions, *Fait v. Regions Financial Corp.* and *Tsereteli v. Res. Asset Securitization Trust 2006-A8.* Plaintiffs argue that *Fait* was only about "future loan loss reserves." (Opp. at 18.) But it was also about the fair value of a loan portfolio at the time of the disclosure, which Judge Kaplan held was a non-actionable opinion: "The fair value of those assets, the majority of which

---

[27] 588 F. Supp. 2d 1206, 1229 (C.D Cal. 2008) ("Several witnesses portray an underwriting system driven by volume and riddled with exceptions. . . . The [Examiner's] Report mentions the internal reports by New Century's Senior Management and negative internal audits that acknowledged serious problems with loan quality and underwriting.").

[28] *See Yu*, 686 F. Supp. 2d at 380; *In re CIT Grp. Inc., Sec. Litig.*, 349 F. Supp. 2d 685, 690–91 (S.D.N.Y. 2004) ("That defendants later decided to revise the amount of loan loss reserves . . . provides absolutely no reasonable basis for concluding that defendants did not think reserves were adequate at the time the registration statement and prospectus became effective.").

[29] Plaintiffs make no effort to distinguish *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 95 (S.D.N.Y. 1993), or *In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 251–52 (S.D.N.Y. 2005), both of which hold that "valuation models depend so heavily on the discretionary choices of the modeler . . . that the resulting models and their predictions can only fairly be characterized as subjective opinions."

consisted of the value of AmSouth's loan portfolio, however, was not a matter of objective fact."[30] That is precisely what is at issue here—the value of BAC's loans, leases, and other assets that "were not traded on the New York Stock Exchange or some other efficient market" that could provide an "objective standard of value."[31] As to *Tsereteli*, Plaintiffs argue that it involved "an appraisal" of property values, as opposed to a valuation. (Opp. at 18 n.15) The dictionary defines an appraisal, however, as "a *valuation* of property."[32]

Contrary to Plaintiffs' assertion, BAC's statements concerning its Tier 1 Capital ratio were matters of opinion. Just as in *Fait*, where Regions's goodwill calculation was deemed an opinion because it derived from valuations that reflected management's judgment,[33] so too is BAC's Tier 1 Capital ratio an opinion because it stems from BAC's unchallenged beliefs concerning the value of its assets. (*See* BAC Mem. at 21.)

## C. The Challenged Statements Were Forward-Looking and Accompanied by Meaningful, Specific Risk Disclosures.

Plaintiffs do not contest that reserves and writedowns are forward-looking statements. While they assert that their allegations concerning BAC's Tier 1 capital ratio and Countrywide due diligence are not forward-looking (Opp. at 22), this is beside the point, because BAC does not argue that the Securities Act safe-harbor or the bespeaks caution doctrine protects those statements (instead, those claims are non-actionable opinions or vague optimistic statements).

Plaintiffs also argue that BAC's risk disclosures were too general to invoke the bespeaks caution doctrine or statutory safe harbor. (Opp. at 22–23.) But BAC's risk disclosures were specific to the challenges in determining loss reserves, disclosing that they involved "difficult,

---

[30] 712 F. Supp. 2d at 122.

[31] *Id.*

[32] MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 10th ed. (1995).

[33] *Fait*, 712 F. Supp. 2d at 123.

subjective and complex judgments, including forecasts of economic conditions and how these economic predictions might impair the ability of our borrowers to repay their loans." (Ex. H at 6.) BAC also disclosed the potential effect of the then-unfolding financial crisis specifically on BAC's loans, leases, and other assets:

- In its Form 10-Q filed on August 8, 2007, BAC disclosed market turmoil causing "less liquidity, greater volatility, widening of credit spreads and a lack of price transparency" in markets in which BAC operated "through exposures in securities, loans, derivatives and other commitments." BAC further warned that this "could adversely impact the Corporation's results of operations." (Ex. G at 119.)

- In its 10-Q filed on November 9, 2007, BAC warned that further market disruptions could increase its mortgage loan exposure "resulting in higher potential for loss unless an orderly disposition of the exposure can be made." (Ex. J at 94.)

- In its Form 10-K for the year ended December 31, 2007 (filed in February 2008), BAC warned that credit ratings downgrades had further depressed the markets, and that BAC would "continue to have exposure to [CDOs], and depending upon market conditions, we may experience additional losses." (Ex. M at 10, 27.)

Under the authorities BAC cited in its Opening Brief—which Plaintiffs make no attempt to distinguish—these detailed, company-specific disclosures are sufficient to invoke the bespeaks caution doctrine and statutory safe harbor. (*See* BAC Mem. at 20.) In fact, BAC's warnings were even more targeted and detailed than the risk disclosures the Second Circuit held were sufficient in a case Plaintiffs cite, *Halperin v. eBanker USA.com, Inc.* There, the Second Circuit concluded that statements that a company would merely "intend[] to endeavor" to offer its shares in an IPO, coupled with warnings that the shares were not yet publicly traded, were enough to defeat a claim that defendants failed to disclose that an IPO was "unlikely due to various structural impediments." The Court affirmed the complaint's dismissal because the "allegedly omitted facts were either disclosed *or implied* in the offering memoranda."[34]

---

[34] 295 F.3d 352, 360–61 (2d Cir. 2002).

-12-

Here, BAC did far more than "imply" that it faced risks. It made detailed disclosures that stand in stark contrast to those found inadequate in Plaintiffs' authorities, which either (i) did not address the specific risk that came to pass,[35] or (ii) concerned only generalized warnings that were not company-specific.[36] Plaintiffs' other cases either did not involve the safe harbor or bespeaks caution doctrine at all,[37] involved statements of present fact that were not forward-looking,[38] or involved specific factual allegations showing that defendants knew their statements were false, rendering the risk disclosures ineffective.[39] Here, by contrast, Plaintiffs do not contest that loss reserves and writedowns are forward-looking and specifically disclaim any allegations that BAC or the other Defendants made knowing misrepresentations.

### III.  THE COUNTRYWIDE ACQUISITION STATEMENTS ARE NON-ACTIONABLE OPTIMISTIC STATEMENTS.

As BAC showed in its Opening Brief, BAC's statements concerning its acquisition of Countrywide—both its optimistic statements concerning post-acquisition business and those concerning BAC's pre-acquisition due diligence—are non-actionable vague statements of optimism. (BAC Mem. at 21–23.) Plaintiffs do not meaningfully contest this, but instead assert

---

[35] *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 618 (S.D.N.Y. 2008) (denying motion to dismiss where complaint alleged plaintiffs' harm arose from defendants' inability to raise capital when offering document disclosures warned only that fund may not find suitable investments in which to deploy its capital); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 571 (S.D.N.Y. 2009) (finding warnings concerning "gold farming" practices inadequate when prospectus failed to disclose change in game rules to prohibit gold farming or the rules' anticipated effect on the company's revenue).

[36] *In re New Century*, 588 F. Supp. 2d at 1226 ("[R]eferences to generalized cautionary language regarding the sub-prime industry appear largely unrelated to whether the alleged statements here [concerning loan origination and underwriting standards] were false and misleading.").

[37] *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland*, 720 F. Supp. 2d 254, 267 (S.D.N.Y. 2010) (finding that claims were not time-barred because general press reports did not put plaintiffs on notice of their claims).

[38] *In re Globalstar Sec. Litig.*, No. 01 Civ. 1748(SHS), 2003 WL 22953163, at *11 (S.D.N.Y. Dec. 15, 2003) ("Defendants can seek no protection for the alleged misrepresentation of a currently existing fact."); *In re Veeco Instruments, Inc., Sec. Litig*, 235 F.R.D. 220, 236 (S.D.N.Y. 2006) ("These challenged statements are not forward-looking.").

[39] *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (defendants were aware of information that "contradicted . . . the inadequate warnings in prospectuses that residual value *could* decline") (emphasis in original).

-13-

a new theory that BAC's thorough due diligence must have uncovered facts inconsistent with BAC's optimistic statements and, thus, the Countrywide opinion statements are actionable because Defendants knew they were false.  (Opp. at 19.)

This theory should be rejected for the simple reason that the FAC has "expressly exclude[d] and disclaim[ed] any allegation that could be construed as alleging fraud or intentional or reckless misconduct."  (FAC ¶¶ 112, 123, 128).  Moreover, merely invoking "due diligence" in conclusory fashion does not establish a defendant's knowledge:

> [P]laintiff would have us infer scienter from the fact that DLJ performed an adequate due diligence review. . . . Plaintiff does not point to any specific information DLJ may have discovered in the course of due diligence, only to the fact that it conducted due diligence. . . . [W]e conclude that pleading the mere fact of due diligence cannot meet the scienter requirement.[40]

Thus, the FAC's claims concerning statements about Countrywide must be dismissed.

## IV. PLAINTIFFS' ALLEGATIONS CONCERNING BAC'S INADEQUATE INTERNAL CONTROLS DO NOT DEMONSTRATE A VIOLATION OF ANY DISCLOSURE DUTY.

BAC's Opening Brief explained that the FAC's allegations concerning BAC's internal controls (including its allegations concerning so-called "dollar-rolling") fail to state a claim because (i) the FAC alleges nothing more than mismanagement; (ii) BAC had no duty to make pejorative disclosures concerning its internal controls; and (iii) BAC's statements concerning its internal controls were merely statements of opinion that the FAC does not allege the defendants knew to be false.  (BAC Mem. at 23–25.)  Plaintiffs do not contest any of these points, and so the FAC's "internal control" allegations should be dismissed.[41]

---

[40] *The Mfrs. Life Ins. Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 99 civ. 1944(NRB), 2000 WL 709006, *4 n.5 (S.D.N.Y. June 1, 2000).

[41] *See Mycak v. Honeywell, Inc.*, 953 F.2d 798, 801 (2d. Cir. 1992) ("Further, [plaintiff] did not contest, and thereby conceded, the statement in defendants-appellees' Rule 3(g) statement that [plaintiff] declined to seek the Philadelphia position.");  *Time Square Const., Inc. v. Mason Tenders Dist. Council of Greater New York & Long Island*, No. 07 Civ. 7250(SAS), 2008 WL 55116, at *6, (S.D.N.Y. Jan. 2, 2008) ("Defendants do not contest this

Plaintiffs attempt to obfuscate the issue by arguing that they allege more than mismanagement concerning failures to take writedowns earlier and the Countrywide acquisition. (Opp. at 20–21.) But BAC does not make this argument with respect to the writedown and Countrywide allegations, only with respect to the internal control allegations.

Nor do the FAC's "dollar-rolling" allegations aid Plaintiffs' claim that BAC should have characterized its internal controls as inadequate. While Plaintiffs assert (without citing any authority) that these allegations are "actionable," Plaintiffs do not dispute what BAC made clear in its Opening Brief—BAC's 2010 statement that its accounting was mistaken does not show that BAC believed two years earlier that its internal controls were "inadequate." (See BAC Mem. at 18.) Thus, the so-called "dollar-rolling" allegations must be dismissed.

## CONCLUSION

The FAC does not satisfy the Securities Act statute of limitations and fails adequately to allege an actionable misrepresentation or omission. Instead, the FAC challenges Defendants' opinions and forward-looking statements by relying on nothing more than hindsight allegations that BAC's performance in a downward-spiraling market turned out to be worse than anticipated. Because such allegations do not make out Section 11 or 12 claims, the FAC should be dismissed with prejudice.

---

position, and so implicitly concede [the issue]."); *Lippe v. Bairnco Corp.*, 229 B.R. 598, 601 (S.D.N.Y. 1999) ("Plaintiffs do not contest these facts, and in their opposition to the motion for reargument, plaintiffs essentially concede the correctness of [defendant]'s arguments in this respect by ignoring them.").

Dated: June 10, 2011                                     Respectfully submitted:

                                            s/ Jonathan Rosenberg
                                            Bradley J. Butwin
                                            Jonathan Rosenberg
                                            William J. Sushon
                                            O'MELVENY & MYERS LLP
                                            Seven Times Square
                                            New York, New York  10036
                                            (212) 326-2000

                                            *Attorneys for the BAC Defendants*